IN RE CONTEMPT OF P. STEPHEN POTTER.
STATE OF NEBRASKA, APPELLEE, V.
P. STEPHEN POTTER, APPELLANT.

301 N.W.2d 560

Filed January 23, 1981. No. 43580.

John Story for appellant.

Donald H. Weaver for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

CLINTON, J.

The appellant, P. Stephen Potter, a lawyer and deputy county attorney of Hall County, Nebraska, was found guilty of contempt by the Honorable L. W. Kelly, Jr., District Judge of the Eleventh Judicial District. The court adjudged that Potter could purge himself of the contempt by paying a fine of $50 and costs of the action and by making an apology to the court. The court further suspended Potter from practicing law before Judge Kelly until he complied with the conditions of the purge. Potter appealed to this court and the order imposing the penalties was suspended pending the outcome of the appeal. We affirm.

The issues raised by Potter's numerous, overlapping assignments of error on appeal are what might loosely be described as technical ones, and we summarize the issues made in the following categories: (1) The

contempt in question was constructive rather than direct contempt, and punishment could not be imposed without hearing and the production of evidence; (2) The prosecution for contempt should have been brought in the name of the State and prosecuted by the county attorney; and (3) The prosecution should have been founded upon an information filed, setting forth the facts relied upon and not merely upon an order to show cause.

The contempt proceedings arose under the circumstances described hereafter and there is no dispute concerning the essential facts.

On June 30, 1980, Potter was prosecuting a criminal case before Judge Kelly and a jury. At 11:55 a.m. the court adjourned for the noon recess, at which time the court twice announced that the court would reconvene at 1:15 p.m. and that the jury and all others should be present at that time. The jury and all others except Potter appeared and were ready at 1:15 p.m. Potter did not appear until 1:25 p.m. At 1:30 p.m. the court, outside the presence of the jury, said: "Mr. Potter, last week you were the attorney of record in two cases in my Court. You failed to appear in both of those cases. Other counsel had to be secured from the County Attorney's Office, and this caused a great deal of delay, and I can't let these things continue.

"I asked you to be back here at 1:15. All of the jurors were here, the defendant, the defendant's attorney, all of the court personnel, and your witnesses; everyone was here but you.

"I'm going to make a finding that you're in contempt of court and will set a hearing for tomorrow morning at 9:A.M. to determine what is going to happen." Potter responded: "Yes, Your Honor," but offered no explanation for his tardiness.

On July 1, 1980, Potter appeared before the court at the designated hour, with the county attorney as his counsel. The court had, by that time, entered an order to show cause which was in the following form:

"IN THE MATTER OF       )
THE CONTEMPT OF        )    <u>ORDER TO SHOW</u>
P. STEPHEN POTTER.      )         <u>CAUSE</u>

"It coming to the attention of the Court that you were tardy for court on Monday, June 30th, 1980, and that said tardiness was not an isolated instance. It further being shown to the Court that your tardiness caused delay in a jury trial in progress and inconvenienced the Court, the court personnel, opposing counsel, defendant and jury.

"NOW, THEREFORE, you are ordered to show cause at 9:00 a.m., July 1, 1980, why you should not be held in contempt of court for said tardiness and punished according to law.

BY THE COURT:
<u>/s/ L. W. Kelly, Jr.</u>
District Judge"

A continuance of 1 week was requested by Potter's counsel and was granted. Potter thereafter filed various motions, including a motion for the appointment of a special prosecutor; a motion to disqualify the judge; and a motion attacking the sufficiency of the order to show cause, asserting that, as a pleading, it was not sufficient to support the contempt proceedings.

On the day and at the time to which the cause was continued, Potter again appeared with the county attorney as his counsel. Argument was made to the court by counsel. It centered upon the question of whether the contempt was direct or indirect or constructive and the difference of procedures applicable in each case. The court overruled the motions to which we earlier referred. It afforded Potter an opportunity to explain his tardiness. Potter's counsel first indicated that Potter would testify, and then withdrew that proposal. Potter did not take the stand or otherwise offer an explanation for his tardiness.

We will now discuss the principles which we believe govern. Neb. Rev. Stat. § 25-2122 (Reissue 1979) pro-

vides: "Contempts committed in the presence of the court may be punished summarily; in other cases the party upon being brought before the court, shall be notified of the accusation against him, and have a reasonable time to make his defense." The power to punish for contempt does not, however, depend upon statute. It is incident to every tribunal from its very constitution and may be generally exercised only by that tribunal whose order has been violated or proceedings interfered with. *Nebraska Children's Home Society v. State*, 57 Neb. 765, 78 N.W. 267 (1899); *State v. Rhodes*, 192 Neb. 557, 222 N.W.2d 837 (1974). Willful failure by an attorney without excuse to appear in court at the appointed time of which he has notice, thereby delaying the business of the court, is contempt. *Chula v. Superior Court*, 57 Cal. 2d 199, 18 Cal. Rptr. 507, 368 P.2d 107 (1962); *Harthun v. Dist. Ct.*, 178 Colo. 118, 495 P.2d 539 (1972).

The distinction between direct contempt and indirect, or constructive, contempt is: The actions which constitute the former occur in the presence of the court so that the court has personal knowledge of the facts and has no need to inform itself of them by using witnesses or other evidence; the events constituting the latter occur outside the presence of the court and the court must inform itself of the facts through the use of witnesses or other evidence. *Gordon v. State*, 73 Neb. 221, 102 N.W. 458 (1905); *Leeman v. Vocelka*, 149 Neb. 702, 32 N.W. 2d 274 (1948). Direct contempt may be punished summarily. Indirect or constructive contempt requires some notice of the facts allegedly constituting the contempt and a hearing or opportunity to be heard. *Leeman v. Vocelka, supra;* Neb. Rev. Stat. § 25-2122; *In re Application of Niklaus, Niklaus v. Holloway*, 144 Neb. 503, 13 N.W.2d 655 (1944). There is a split of authority on the question of whether tardiness or failure to appear constitutes direct or constructive contempt. Annot., 97 A.L.R.2d 457 et seq. (1964); *In re Farquhar*, 492 F.2d 561 (D.C. Cir. 1973); *Chula v. Superior Court, supra.*

Some courts have referred to tardiness or failure to appear as a "hybrid," since the tardiness or failure to appear may, and usually is, within the court's personal knowledge although determining whether the failure is willful and without excuse may require the production of evidence. 97 A.L.R.2d 457 et seq. (1964); *Chula v. Superior Court, supra.*

In the case before us, the court had personal knowledge of the tardiness. It had personal knowledge, apparently, about previous instances of tardiness where no excuse was proffered.

In this case the court did not proceed summarily. It entered a show cause order which informed Potter generally of the facts allegedly constituting the contempt. The court set the matter for hearing and gave Potter adequate time to prepare. Potter was represented by counsel. He was given an opportunity to offer any excuse he had and to show the state of his mind.

We have held that before punishment for indirect contempt may be imposed, there must be an accusation in some form, notice, and an opportunity for defense. *Muffly v. State*, 129 Neb. 334, 261 N.W. 560 (1935).

We adopt the reasoning of Gibson, Chief Justice, as stated by his concurring opinion in *Chula v. Superior Court, supra* at 206-08, 368 P.2d at 112-13. We quote it directly: "In the usual case of direct contempt all the relevant events occur in the immediate view and presence of the court, whereas indirect contempt ordinarily consists of acts out of the presence of the court. In the present case we have what might be termed a hybrid situation; the charge of contempt arose from events occurring in the presence of the court which it is claimed should be excused by matters taking place outside the courtroom.

"It is obvious that the disruption of judicial proceedings caused by the absence of an attorney occurs in the immediate view and presence of the court. The burden of excusing the obstruction must, of course, be

placed upon the attorney. (*Lyons v. Superior Court*, 43 Cal. 2d 755, [278 P.2d 681].) Where the attorney, although notified by the court to appear at a specific time, fails to do so and does not offer an excuse, all matters relevant to the determination of contempt happen in court. In those cases where the attorney seeks to excuse his conduct, the excuse ordinarily will be based on matters occurring out of court. However, the contingency that an attorney who is absent may later offer an excuse should not compel a judge, when instituting proceedings, to treat the conduct as indirect rather than direct contempt.

"Much of the procedure required by statute with respect to a charge of indirect contempt (see Code Civ. Proc., §§ 1211, 1212, 1217) would be pointless in a situation like the one before us and is unnecessary for the protection of the rights of attorneys or for the orderly administration of justice. When it is considered that the failure of an attorney to appear at the announced time for resumption of judicial proceedings occurs in the presence of the court and is shown by its records, there is no reason to require the judge to file an affidavit or statement of facts setting forth the basis of the charge of contempt or to require him to give or obtain testimony establishing the facts. The rights of the attorney will be fully protected by an order to show cause apprising him of the charge against him followed by an opportunity to be heard. If the attorney claims that his conduct is excusable, he is entitled to a hearing where he may offer evidence.

"Petitioner was apprised of the charge against him by the order to show cause, and he was given a full opportunity to present evidence in support of his claim that his conduct was excusable. Under all the circumstances, the court was justified in concluding that petitioner did not show a satisfactory excuse for his failure to appear as directed."

We take judicial notice of the fact that Judge Kelly is no longer a judge of the Eleventh Judicial District.

The portion of the order denying Potter the right to practice before Judge Kelly is, therefore, moot.

We remand the cause to the District Court for Hall County for implementation of Judge Kelly's order. The apology may be made to any of the district judges of the Eleventh Judicial District at the first opportunity.

AFFIRMED AND REMANDED FOR FURTHER PROCEEDINGS.

KRIVOSHA, C.J., BRODKEY, WHITE, and HASTINGS, JJ., concur in result.